UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DENISE FALLON,

                        Plaintiff,

    -against-                                                  3:11-CV-1339 (LEK)

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                        Defendant.

## MEMORANDUM-DECISION and ORDER

**I.    INTRODUCTION**

This case has proceeded in accordance with General Order 18 of the United States District Court for the Northern District of New York, which sets forth the procedures to be followed in appealing a denial of Social Security benefits. Both parties have filed briefs. Dkt. Nos. 14 ("Plaintiff's Brief"); 17 ("Defendant's Brief"). For the reasons discussed below, the case is remanded for reconsideration of Plaintiff Denise Fallon's ("Plaintiff") Residual Functional Capacity ("RFC"), Plaintiff's credibility, and Plaintiff's treating physicians' opinions.

**II.    BACKGROUND**

    **A. Plaintiff's Ankle Treatment**

Plaintiff was first seen for her ankle injury by her primary physician, Dr. Maklad, on January 23, 2009. Tr. at 277. Dr. Maklad referred Plaintiff to a doctor of osteopathic medicine, Dr. Blonski, whom Plaintiff saw on March 2, 2009. Id. at 278, 471. Dr. Blonski, believing that an MRI would not be required unless the symptoms of swelling, tenderness, and pain while walking persisted, recommended conservative treatment including physical therapy and Tylenol for pain. Id. at 471-

72. On April 13, 2009, Dr. Blonski prescribed a CAM walker boot-style brace for ankle instability and pain. Id. at 470. After seeing Plaintiff once in May and once in June, Dr. Blonski referred Plaintiff to a podiatry specialist when an MRI showed a torn peroneal brevis tendon in her ankle. Id. at 468-69, 473. Dr. Blonski indicated that Plaintiff should consider surgery if other solutions were not available. Id. at 468.

Plaintiff saw Dr. Naoulo, a podiatrist, on two occasions in July and August of 2009. Tr. at 401-02, 404-05. Plaintiff's right ankle was x-rayed, and Dr. Naoulo determined that Plaintiff should be put on non-weight-bearing status for the right foot due to a fracture and the aforementioned torn tendon. Id. at 402. Plaintiff saw podiatrist Dr. Sweet on August 31, 2009, and received an injection of Kenalog for ankle pain. Id. at 399. On September 14, 2009, Plaintiff saw Dr. Naoulo, who reported that the injection did not relieve Plaintiff's ankle pain. Id. at 395. Dr. Peterson, DPM, noted that a medical equipment facility had fitted Plaintiff for a Richie brace by the time of her visit on November 2, 2009. Id. at 392. But by Plaintiff's February 1, 2010, follow-up appointment to determine the effectiveness of the Richie brace, Plaintiff's ankle had not recovered stability and she discussed surgery with the podiatrist on duty that day, Dr. McNerney. Id. at 391.

Plaintiff saw Dr. Sweet again on May 19, 2010. Tr. at 467. Dr. Sweet noted that Plaintiff seemed to have exhausted available conservative treatments and was interested in surgery, but Dr. Sweet needed Plaintiff's medical records before proceeding further. Id. Plaintiff last saw Dr. Sweet on January 24, 2011, when Dr. Sweet noted that Plaintiff had missed several appointments but was still experiencing a great deal of ankle pain, and that Plaintiff had tried physical therapy and continued to wear the Richie brace. Id. at 466. Dr. Sweet further noted that Plaintiff could have arthroscopic surgery on her right ankle but might need more extensive surgery to repair the tendon

2

and ligament tears described in the MRI report.  Id.  Dr. Sweet submitted a Medical Questionnaire dated February 8, 2011, stating that Plaintiff's condition impacted standing and walking, and that Plaintiff could not stand for two hours during an eight-hour workday or lift more than five pounds at all.  Id. at 482-84.  These recommendations were based on Plaintiff's chronic ankle pain and tendon and ligament tears in Plaintiff's right ankle.  Id.

### B. Plaintiff's Treatment for Heart and Back Conditions

Cardiologist Dr. Contini has treated Plaintiff for heart palpitations since September 11, 2008, when a Holter Monitor Report performed during an emergency room visit showed that Plaintiff's heart exhibited physiologic sinus tachycardia.  Id. at 434.  Plaintiff saw Dr. Kashou on October 23, 2008, for recurrent palpitations and shortness of breath.  Id. at 426.  Plaintiff received treatment at the emergency room on November 4, 2008, where an echocardiogram showed mild abnormalities.  Id. at 432-33.  Thereafter Plaintiff saw Dr. Contini for heart palpitations on November 25, 2008; January 8, 2009; July 31, 2009; January 22, 2010; March 18, 2010; July 12, 2010; and November 16, 2010.  Id. at 421-24, 475-77.  Dr. Contini submitted a Medical Questionnaire with regard to Plaintiff's heart condition on February 1, 2011, stating that Plaintiff's condition impacted standing and walking, that Plaintiff could stand for at least two hours out of an eight-hour workday, and that Plaintiff could safely lift five to ten pounds for three to eight hours per day, but could not safely lift over ten pounds for more than three hours during an eight-hour workday.  Id. at 480.  Additionally, Dr. Contini noted that Plaintiff would need significant unrestricted periods of rest if she were to return to repetitive work activity.  Id. at 479.

Plaintiff received treatment for lower-back pain in October 2006 and June 2007, and began treatment with Dr. Kaczynski on August 27, 2009.  Tr. at 270.  During that visit, Plaintiff was

3

diagnosed with a lumbar disc disorder. Id. at 271. Dr. Kaczynski prescribed Tramadol and Soma for Plaintiff's back pain, and also directed Plaintiff to avoid excessive lifting, standing, and walking. Id. at 271. Plaintiff saw Dr. Kaczynski on September 15, 2009; September 24, 2009; and January 13, 2010, during which time Plaintiff's pain level remained constant, and Dr. Kaczynski discussed with Plaintiff the possibility of osteopathic manipulative treatment. Id. at 256, 264, 267-68. On September 22, 2009, an MRI of Plaintiff's lumbar spine revealed a broad-based diffuse disc bulge and mild canal stenosis. Id. at 246-47.

### C. Medical Consultants

Dr. Soden-Serjanej, a medical consultant working for the Social Security Administration ("SSA"), examined Plaintiff on March 10, 2010. Tr. at 414. Dr. Soden-Serjanej noted that Plaintiff was wearing an ankle brace, an air splint, and support hose. Id. Dr. Soden-Serjanej described Plaintiff as having a normal gait and station, but noted that Plaintiff was unable to do any dorsal or plantar flexion with her right ankle. Id. at 417. Dr. Soden-Serjanej did not manipulate Plaintiff's ankle to test those movements due to the possibility of a fracture. Id.

With regard to Plaintiff's back, Dr. Soden-Serjanej noted that, upon testing Plaintiff's lumbar spine, Plaintiff was only able to flex ten degrees and was unable to rotate laterally in either direction. Tr. at 417. Plaintiff showed full flexion in the extension, lateral flexion, and full rotary movement of her cervical spine region, and similarly demonstrated no abnormality in the thoracic region of the spine. Id.

Dr. Soden-Serjanej described Plaintiff's daily activities essentially as set out by Plaintiff in her disability report on January 27, 2010. See Tr. at 177-84, 415. Plaintiff cares for herself and for her children, prepares food, and has some hobbies, including reading. Id. at 177-78, 415. Dr.

Soden-Serjanej noted that Plaintiff receives assistance with doing laundry, cleaning, and shopping. Id. at 178-81, 415. Ultimately, Dr. Soden-Serjanej opined that Plaintiff "has mild limitations of her right ankle at this time to perform activities such as standing, walking, and ability to carry heavy objects," but "no difficulty with handling objects, hearing, speaking, or traveling." Id. at 418.

Dr. Gauthier, a non-examining consultive cardiologist, analyzed Plaintiff's heart condition based on her medical records upon request for advice by J. Shelp, an analyst for the SSA. Tr. at 436. Dr. Gauthier concluded that Plaintiff did not suffer from severe cardiac impairment, and determined that Plaintiff was "unlikely to tolerate carrying 50 lb 1/3 of a day due to cardiac disease." Id.

**D. Procedural History**

Plaintiff alleges disability due to a broken ankle, a heart problem, and a back problem. Tr. at 168. Plaintiff protectively filed for disability insurance benefits and Supplemental Security Income ("SSI") on October 23, 2009. Id. at 163. The SSA denied the application on March 31, 2010. Id. at 70. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 90. The hearing occurred on February 3, 2011. Id. at 14. On May 19, 2011, the ALJ issued a decision finding that Plaintiff was not disabled. Id. On May 31, 2011, Plaintiff filed a request for review with the Appeals Council. Id. at 8. The Appeals Council denied the request for review and the ALJ's decision became the final decision of the Commissioner of Social Security on September 29, 2011. Id. at 1. Plaintiff timely filed this action on November 11, 2011. Dkt. No. 1 ("Complaint").

**E. The ALJ's Decision**

The ALJ made the following findings:

1. Plaintiff met the disability insured status requirements of the Social Security Act through

5

December 31, 2008.  Tr. at 16.

2.  Plaintiff had not engaged in substantial gainful activity since July 5, 2008, the alleged onset date of disability.  Id.

3.  Plaintiff had the following "severe" impairments: chronic pain in the right ankle status post sprain/injury, degenerative disc disease of the lumbar spine, and neurocardiogenic tachycardia.  Id.

4.  Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  Id. at 18.

5.  Plaintiff had the RFC to perform light work, with lifting and/or carrying twenty pounds occasionally and ten pounds frequently, standing and/or walking for about six hours total in an eight-hour workday, and sitting for about six hours total in an eight-hour work day, with occasional climbing, balancing, stooping, kneeling, crouching, and crawling, with the mental demands of unskilled work.  Id. at 19.

6.  Plaintiff had no past relevant work within the RFC.  Id. at 22.

7.  Considering Plaintiff's age, education, work experience, and RFC, Plaintiff was not disabled because there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  Id. at 23.

### III. LEGAL STANDARD

#### A. Standard for Benefits

The regulations promulgated by the SSA define disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 20 C.F.R. § 1505(a). In order to determine whether a claimant seeking disability insurance benefits and/or supplemental security income has established that she is disabled, the SSA uses a five-step sequential evaluation. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). If the claimant is determined not to be disabled at any step, the SSA denies the claim; if it cannot be determined whether the claimant is or is not disabled, the SSA will go on to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof during the first four steps; the burden shifts to the SSA at the fifth step. Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008).

First, the SSA considers whether the claimant is working and whether that work activity is "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is determined to be not disabled. Id. Second, the SSA considers whether: (1) the claimant has a severe medically determinable physical or mental impairment, or a combination of impairments that is severe; and (2) whether that impairment or combination of impairments meets the duration requirement. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If not, the claimant is determined to be not disabled. Id. Third, the SSA considers the severity of the claimant's medical impairment(s) a second time to determine whether they meet any of those listed in appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairments do not meet any on the list, the SSA makes a determination about the claimant's RFC based on all relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(a)(4)(iv), (e), 416.920(a)(4)(iv), (e). The SSA uses the RFC at the fourth step to determine whether the claimant can do her past relevant work. Id. If the claimant is unable to perform her past work, or is deemed not to have any past work, the agency determines whether

there is other work that the claimant could perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The SSA must prove that the claimant is capable of working, and if it cannot, the SSA must find that the claimant is disabled. Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008).

### B. Standard of Review

The Court's review of an ALJ decision is limited to a determination of whether it applied the correct legal standards and is supported by substantial evidence in the record. Roat v. Barnhart, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010) (Kahn, J.). Substantial evidence means "more than a scintilla," and also requires that the evidence cited be relevant to the conclusion reached by the ALJ with regard to the plaintiff's impairments. Id.; see also Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

### C. Treating Physician Rule

The ALJ is required to give a treating physician's opinion as to the nature and severity of the impairment(s) controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); Burgess, 537 F.3d at 128. Treating physicians' opinions that are inconsistent with the opinions of other medical experts cannot be given controlling weight, but expert opinions that are not sufficiently substantial will not undermine the opinion of a treating physician. Burgess, 537 F.3d at 128-29 (citing Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000)). Furthermore, when a treating physician's opinion is not given controlling weight, the ALJ must consider the factors set out in 20 C.F.R. § 404.1527(d)(2) to determine what weight the opinion should receive, namely,

(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). An ALJ's opinion that does not comprehensively set out reasons for assigning less than controlling weight to a treating physician's opinion will be remanded. Halloran, 362 F.3d at 33; Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999).

## IV. DISCUSSION

Plaintiff argues that: (1) the ALJ's RFC finding was not supported by substantial evidence; and (2) the ALJ did not give proper weight to the medical opinions of Plaintiff's treating podiatrist and cardiologist. See generally Pl.'s Br. Specifically, Plaintiff objects to the ALJ's determination that she is able to do light work, which includes "stand[ing] and/or walk[ing] for about six hours total in an eight-hour workday." Pl.'s Br. at 2; Tr. at 19.

Defendant argues that the ALJ's RFC determination is supported by substantial evidence and that the ALJ properly evaluated all of Plaintiff's treating physicians' opinions. See generally Def.'s Br.

### A. The ALJ's Credibility Determination

In finding that Plaintiff "had the residual functional capacity to perform light work," the ALJ determined that "the clinical findings and objective medical evidence [did] not support [Plaintiff's] allegations of significant physical functional limitations." Tr. at 19, 21. According to the ALJ, "Plaintiff's statements concerning the intensity, persistence, and limiting effects of [the] symptoms [were] only partially credible." Id. at 21. Although Plaintiff has not addressed

this assessment of her statements as only partially credible, the Court must nevertheless review this credibility finding because it necessarily contributed to the ALJ's ultimate RFC determination.  See Gladle v. Colvin, No. 5:11-CV-0991, 2013 WL 5503687, at *9 (N.D.N.Y. Sept. 30, 2013) (Kahn, J.); see also 20 C.F.R. § 416.945(a)(3).

An ALJ is not required to accept a plaintiff's subjective complaints without inquiry. Rockwood v. Astrue, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009).  However, when rejecting a plaintiff's subjective complaints for lack of credibility, the ALJ "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is based on substantial evidence."  Martone v. Apfel, 70 F. Supp. 2d 145, 152 (N.D.N.Y. 1999) (quoting Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  The ALJ must follow a two-step process to determine the credibility of a plaintiff's symptoms.  20 C.F.R §§ 404.929, 404.1529.  Once the ALJ has found that the plaintiff has a medically determinable impairment that could reasonably be expected to produce the plaintiff's symptoms, the ALJ must evaluate the intensity and persistence of the symptoms, and the extent to which the symptoms limit the plaintiff's ability to work.  Id. at §§ 404.929(c), 404.1529(c).  Severity of impairment should be evaluated with reference not only to objective medical evidence, but also to other factors found in the record, including: the plaintiff's daily activities; the location, duration, frequency, and intensity of pain and other symptoms; precipitating and aggravating factors; type, dosage, effectiveness and side effects of medication; other treatments sought for relief of pain or symptoms; other measures taken by the plaintiff to relieve symptoms; and any other factors causing functional limitations and restrictions due to pain or other symptoms.  Id. at §§ 404.929(c)(3)(i)-(vii), 404.1529(c)(3)(i)-(vii).

Here, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are only partially credible." Tr. at 21. This determination was based on the ALJ's finding that: (1) Plaintiff's alleged limitations were inconsistent with objective medical evidence in the record; and (2) Plaintiff's work history demonstrated " a weak attachment to the work force." Id. According to the ALJ, Plaintiff's subjective statements were not substantiated by the evidence in the record because Plaintiff failed to produce "appropriate, probative evidence as required by the Social Security Act." Id.

The ALJ's credibility determination was not supported by substantial evidence. Although Plaintiff's complained-of disability and limitations are due to pain resulting from several impairments that the ALJ found were documented by objective medical evidence, the ALJ nevertheless found Plaintiff to be not disabled. Id. The evidence cited to support that decision was taken out of context, irrelevant to Plaintiff's particular medically identifiable impairments, or misread. An ALJ "cannot be deemed to have complied with the requirement" of "consider[ing] all of the evidence of record, including [the plaintiff's] testimony and other statements with respect to [her] daily activities," by misconstruing the evidence. Genier v. Astrue, 606 F.3d 46, 50 (2d Cir. 2010).

In support of his credibility determination, the ALJ concluded that Plaintiff's allegations of disability due to pain and physical limitation were inconsistent with her daily childcare activities. Tr. at 22. The ALJ created a false inconsistency by contrasting Plaintiff's testimony that she "lives with and cares for her children, [and] that she 'has to lie down a lot'" with a

11

statement that "[Plaintiff] 'does not get much rest caring for her family.'" Tr. at 20. In fact, the full statement, made by a nurse in the context of a doctor's visit for lower back pain, was, "[Plaintiff] does not get much rest caring for her family. 1 [year-old] baby now up more at night teething," Id. at 462. The full statement shows that Plaintiff's child caused her to lose sleep, not that childcare demanded a high level of activity. The ALJ further remarked that Plaintiff's daily activities "includ[e] intensive child care." Id. at 22. However, Plaintiff testified that she must often lie down while caring for her children in order to alleviate pain. Id. at 52. Furthermore, that Plaintiff must care for her own children to the extent possible should not discredit her claim. See Balsamo v. Chater, 142 F.3d 75, 81-82 (2d Cir. 1998) (recognizing that a claimant does not have to be an invalid to be disabled and that the ability to occasionally perform some household chores does not demonstrate an ability to perform a certain level of work for sustained periods).

In order to satisfy the "substantial evidence" standard, an ALJ's conclusions must be supported by "such *relevant* evidence as a reasonable mind might accept as adequate to support a conclusion." Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2003). With regard to Plaintiff's ankle impairment, the ALJ concluded that Plaintiff's allegations of significant functional limitation were inconsistent with the record evidence because "[a] treatment note reveals that the claimant only 'intermittently uses a Richie brace.'" Tr. at 20. However, this treatment note was made in reference to the possible causes of Plaintiff's lower back pain, in the context of a January 13, 2010 doctor's visit for lower back pain—not in reference to the condition of Plaintiff's ankle. Tr. at 462. Treatment notes from Plaintiff's visits to podiatrists in the months preceding and following this visit show that Plaintiff had tried several types of

12

braces to manage ankle pain but none had helped, and Plaintiff therefore had to consider surgery. Tr. at 392–93, 467–70. Although the ALJ determined that Plaintiff could not be disabled because she only sometimes wore a brace, the record shows that Plaintiff did not wear the brace because it was unhelpful and exacerbated her back condition.

Finally, while the ALJ on several occasions throughout the credibility assessment referred to treatment notes describing Plaintiff as being "in 'no acute distress'" and a "'well-developed, well-nourished, pleasant, cooperative obese female,'" and noting that Plaintiff's "'distal neurovascular status [was] otherwise intact grossly,'" the ALJ chose not to address the bulk of the medical notes documenting Plaintiff's pain and limited range of ankle movement. Tr. at 20-21, 417, 467-70. All of the observations that the ALJ relied on are peripheral, not substantive, components of a physical examination. Observations taken out of context and not relevant to the condition at issue do not constitute substantial evidence, especially when relevant evidence is ignored. The issue of Plaintiff's credibility with regard to the pain, intensity, and limiting effects of her symptoms must be remanded for consideration in light of the entire record.

**B. Weight Given to Treating Physicians' Opinions**

In reaching his RFC determination, the ALJ "[gave] great weight to the report completed by the Administration's consultive examiner, weight to the report completed by the Administration's medical consultant, [and] limited weight to the medical source statements completed by the claimant's treating physicians." Tr. at 22. The ALJ reasoned that Plaintiff's treating physicians' medical reports should be accorded the least weight because they were "not entirely consistent with the longitudinal medical evidence in the record, especially with regard

to the claimant's ability to stand/walk and lift/carry." Tr. at 22. Furthermore, the ALJ concluded that the limitations described in the reports were "not consistent with the longitudinal medical evidence in the record and [were] not consistent with the claimant's activities of daily living, including intensive child care." Id.

Here, substantial evidence does not support the ALJ's conclusion that Plaintiff's treating physicians' opinions conflicted with the record evidence regarding Plaintiff's ability to lift, stand, and walk. On the issue of Plaintiff's ankle impairment, the only relevant agency consultant opinion is that of consultive examiner Soden-Serjanej. While the ALJ focused on notes such as "[Plaintiff was] in no acute distress with a 'normal' gait and station" or "[Plaintiff] needed no help getting on and off the exam table or changing for the exam [and] was able to rise from the chair without difficulty," the ALJ disregarded notes from the physical examination section of the report stating that "[Plaintiff's] right ankle was unable to perform any dorsal or plantar flexion nor did [Dr. Soden-Serjanej] do any active dorsi or plantar flexion secondary to the possible fracture that has been untreated in that ankle." Tr. at 417. This objective finding is consistent with the opinions and findings of Plaintiff's treating physicians. Dr. Sweet stated in the RFC Questionnaire that Plaintiff's condition impacts her ability to stand and walk, that Plaintiff is not able to stand for two hours out of an eight hour day or lift more than five pounds, and that these limitations were based on MRI results showing that Plaintiff had an "osteochondral defect [of the] talar dome," a partially torn peroneus brevis tendon, and possible rupture of lateral ankle ligaments." Tr. at 483-84.

Dr. Soden-Serjanej's opinion cannot override the treating physician's opinion and "support the conclusion that [Plaintiff] can work." Green-Younger, 335 F.3d at 107. The

14

opinion of a medical expert, such as an agency consultive examiner, should not be given controlling weight when it does not "rise to the level of evidence that is sufficiently substantial to undermine the opinion of the treating physician." Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008). In conclusively stating that Plaintiff had "mild limitations of her ankle at this time to perform activities such as standing, walking, and ability to carry heavy objects," and a prognosis of "[g]ood," Dr. Soden-Serjanej's opinion was insufficient for the ALJ to infer that Plaintiff "had the residual functional capacity to perform the full range of light work." Tr. at 23; see Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000) (explaining that a consulting physician's "use of the terms 'moderate' and 'mild'" concerning a plaintiff's ability to walk, stand, or lift, without additional information, renders the opinion too vague to allow an ALJ to infer a plaintiff's ability to work).

With regard to Plaintiff's heart treatment, substantial evidence does not support the ALJ's assignment of greater weight to the opinion of agency consultant cardiologist Gauthier than to Plaintiff's treating cardiologist, Dr. Contini. Dr. Contini's opinion is consistent with the opinion consultant Gauthier provided to agency analyst Shelp, that "[Plaintiff is] unlikely to tolerate carrying 50 lb 1/3 of a day due to cardiac disease." Tr. at 436. In his RFC Questionnaire, Dr. Contini opined that, as a result of Plaintiff's heart impairment, Plaintiff could not safely lift more than ten pounds for more than three hours during an eight-hour workday, if at all. This conclusion is consistent with Gauthier's because both indicate that Plaintiff should not lift heavy loads. Tr. at 480. That Dr. Contini recommended that Plaintiff would, during an eight-hour workday, likely need more than one 10-minute rest period per hour in addition to a thirty-minute lunch, and possibly unlimited rest periods, is not inconsistent with consultant

15

Gauthier's opinion concerning Plaintiff's ability to lift during the workday, because Dr. Contini's recommendation is not relevant to Plaintiff's ability to lift. Tr. at 436, 479; Def.'s Br. at 17.

Consultant Gauthier's opinion, like the opinion of Dr. Soden-Serjanej, is not substantial enough to undermine Dr. Contini's opinion. While Dr. Contini based his RFC determinations on numerous consultations with Plaintiff from 2008 to 2010 and an echocardiogram, Gauthier did not examine Plaintiff. Furthermore, Gauthier's opinion is too vague to allow the ALJ to make an inference about Plaintiff's ability to work.

The ALJ also failed to comprehensively set out his reasons for not giving the treating physicians' opinions controlling weight. See 20 C.F.R. § 404.1527(c)(2). The regulations provide that factors to be considered include whether the source of the opinion has examined the plaintiff, whether the source is a treating source, the "[l]ength of the treatment relationship and frequency of examination," the familiarity the source has with the plaintiff's impairments, the relevance of the evidence provided by the source, the consistency of the source's opinion with the rest of the record as a whole, and the specialization of the source. Id. The ALJ concluded only that

> [the treating physicians' opinions] are not entirely consistent with the longitudinal medical evidence in the record, especially with regard to [Plaintiff's] ability to stand/walk and lift/carry. . . . These limitations are not consistent with the longitudinal medical evidence in the record and are not consistent with the claimant's activities of daily living, including intensive child care.

Tr. at 22. The above is a cursory and incomplete analysis of the factors listed in the regulations and requires remand. Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998).

16

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the decision of the Commissioner is **VACATED**, and the case is **REMANDED** for a new hearing consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all the parties.

**IT IS SO ORDERED**.

DATED: January 08, 2014
Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge